United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AUDREY CORNISH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OAKLAND HOUSING AUTHORITY, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-05947-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS**<br><br>Re: ECF No. 21 |

## INTRODUCTION

On September 27, 2016 or 2017,[1] plaintiff Audrey Cornish was at her apartment complex's parking lot when she realized that an Oakland Housing Authority ("OHA") police officer had ticketed her car. The officer ordered Ms. Cornish to move her car. As Ms. Cornish was doing so, a second OHA officer — defendant Phillip Chow — pulled her over and demanded that she get out of her car. Before Ms. Cornish could comply, without warning, Officer Chow pulled her out of her car, threw her to the ground, and threatened to tase her.

---

[1] *Compare* First Amend. Compl. ("FAC") – ECF No. 18 at 1 (¶ 1) (alleging September 27, 2016) *with id.* at 3 (¶ 13) (alleging September 27, 2017). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 18-cv-05947-LB

Ms. Cornish brings (1) a claim under 42 U.S.C. § 1983 for excessive force,[2] (2) a claim under 42 U.S.C. § 1983 for unlawful detention and arrest against Officer Chow, (3) a claim under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the OHA, (4) a claim under the California Bane Act, Cal. Civ. Code § 52.1, against Officer Chow, (5) a claim of state-law assault and battery against Officer Chow, (6) a state-law claim of negligence against Officer Chow, and (7) a state-law claim of false imprisonment and illegal detention against Officer Chow. The defendants move to dismiss Ms. Cornish's third and fourth claims (her *Monell* and Bane Act claims).

The court can decide the motion without oral argument, N.D. Cal. Civ. L.R. 7-1(b). The court grants the defendants' motion to dismiss the *Monell* claim without prejudice and with leave to amend and denies the motion to dismiss the Bane Act claim.

### STATEMENT[3]

**1. The Incident**

On September 27, 2016 or 2017, at approximately 12:30 p.m., plaintiff Audrey Cornish, an African American woman, was at her apartment complex's parking lot when she realized that a (yet-to-be-identified) OHA officer had ticketed her car.[4] The officer ordered Ms. Cornish to move her car.[5] Ms. Cornish moved her car from the apartment-complex parking lot to public parking on the street.[6]

---

[2] The FAC is not specific about the defendants for the excessive-force claim. The heading to the excessive-force claim says only that Ms. Cornish brings it against "DOES 1–25" and does not say that she brings it against the OHA or Officer Chow. *Id.* at 5. Paragraph 20 (under the heading) alleges conduct by Officer Chow, and thus it may be that Ms. Cornish meant to plead this claim against him. The defendants did not in any event move to dismiss the claim, which otherwise states a claim for excessive force.

[3] Unless otherwise noted, the facts in the Statement are allegations from the FAC.

[4] *Id.* at 1 (¶ 1), 3 (¶ 13).

[5] *See id.* at 3–4 (¶ 13).

[6] *Id.*

As Ms. Cornish was moving her car, another OHA officer — defendant Phillip Chow — pulled Ms. Cornish over.[7] Ms. Cornish complied.[8] Officer Chow ordered Ms. Cornish to get out of her car.[9] Before Ms. Cornish could comply with Officer Chow's orders, Officer Chow pulled her out of the vehicle and threw her to the ground.[10] Ms. Cornish did not threaten any OHA officers, and Officer Chow did not provide any warning or explanation for his behavior before seizing Ms. Cornish and using force.[11] Ms. Cornish tried to run to her apartment.[12] Officer Chow threatened to tase Ms. Cornish.[13] Medical personnel arrived and examined and treated Ms. Cornish for cuts and bruises to her knee and feet.[14] The OHA towed Ms. Cornish's car.[15]

The OHA conducted an investigation of the incident.[16] After an investigation, OHA Chief of Police Carel Duplessis informed Ms. Cornish in a letter that Officer Chow had violated department policy and committed misconduct against her.[17] The OHA Police Department did not discipline or retrain Officer Chow after this finding.[18]

### 2. Other Incidents

Ms. Cornish alleges that the OHA has a practice of harassing minorities at their housing units.[19]

---

[7] *Id.* at 4 (¶ 13).
[8] *Id.*
[9] *Id.* (¶ 14).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* (¶¶ 14–15).
[15] *Id.* (¶ 15).
[16] *See id.* (¶ 16).
[17] *Id.*
[18] *Id.* at 7 (¶ 29).
[19] *Id.* at 6 (¶ 28).

In 2012, the OHA police were sued for what Ms. Cornish describes as "excessive force and false arrest for discriminatory purposes against an African-American male."[20]

In 2018, the OHA police were sued for what Ms. Cornish describes as their "using the loitering ordinance to harass primarily young black men and women for simply being outside of their apartments[,] including using the 'loitering ordinance as grounds for handcuffing someone who was getting ready for a barbecue, questioning a group that had assembled for a funeral and stopping a woman who was there to drop off medicine for her mother.'"[21]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are

---

[20] *Id.* (¶ 28(b)) (citing *Carr v. Oakland Hous. Auth.*, No. 3:12-cv-04051-EMC (N.D. Cal. filed Aug. 1, 2012)).

[21] *Id.* (¶ 28(a)) (quoting Kimberly Veklerov, *Suit: Oakland housing police misuse loitering law, issue citations for no reason*, S.F. Chronicle, Sept. 20, 2018, *available at* https://www.sfchronicle.com/bayarea/article/Suit-Oakland-housing-police-misuse-loitering-13245625.php (last visited Apr. 18, 2019)).

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (citations and internal quotation marks omitted).

## ANALYSIS

### 1. The *Monell* Claim for Municipal Liability

Liability against a government entity starts from the premise that there is no respondeat superior liability under 42 U.S.C. § 1983, i.e., no entity is liable simply because it employs a person who has violated a plaintiff's rights. *See, e.g.*, *Monell*, 436 U.S. at 691; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Local governments can be sued directly under Section 1983 only if the public entity maintains a policy or custom that results in a violation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 690–91.

To impose *Monell* entity liability under Section 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional rights, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. # 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *accord, e.g.*, *Parker v. City of Pittsburg*,

No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss).

### 1.1 Longstanding Practice or Custom

#### 1.1.1 Governing law

To plead a *Monell* claim through a "longstanding practice or custom," the "practice or custom must consist of more than 'random acts or isolated events' and instead, must be the result of a 'permanent and well-settled practice.'" *Parker*, 2017 WL 2986225, at *5 (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1998), *overruled on other grounds by Bull v. City and Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010)). "[T]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy." *Leon v. Hayward Bldg. Dep't*, No. 17-cv-02720-LB, 2017 WL 3232486, at *3 (N.D. Cal. July 31, 2017) (some internal quotation marks omitted) (quoting *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)). "'Isolated or sporadic incidents,' by contrast, will not support *Monell* liability against a municipality." *Id.* (quoting *Hunter*, 652 F.3d at 1233).

"'In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.'" *Heyward v. BART Police Dep't*, No. 3:15-cv-04503-LB, 2016 WL 730282, at *6 (N.D. Cal. Feb. 24, 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "'A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Id.* (quoting *Connick*, 563 U.S. at 61). "'To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 61). "Only then 'can such a shortcoming be properly through of as a city policy or custom that is actionable under § 1983.'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

"'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal brackets and some

internal quotation marks omitted) (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "'Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.'" *Id.* (quoting *Connick*, 563 U.S. at 61). "'The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 61). "'A less stringent standard of fault for a failure-to-train claim would result in de facto respondeat superior liability on municipalities[.]'" *Id.* (some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 61). "Thus, 'a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62). "'Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability.'" *Id.* (some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62). "'Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Id.* (quoting *Connick*, 563 U.S. at 62).

### 1.1.2 Application

Ms. Cornish alleges that the OHA was named in lawsuits in 2012 and in 2018 alleging that OHA officers "target" young African American men and women.[22] These two lawsuits over the course of six years are not enough to show a "custom [that is] so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy,'" as opposed to "[i]solated or sporadic incidents, [which] will not support *Monell* liability against a municipality." *Cf. Leon*, 2017 WL 3232486, at *3 (granting motion to dismiss *Monell* claim); *see also, e.g.*, *Bagley v. City of*

---

[22] FAC – ECF No. 18 at 6–7 (¶¶ 28–31); Pl. Opp'n – ECF No. 27 at 5.

*Sunnyvale*, No. 16-cv-02250-JSC, 2017 WL 3021030, at *2 (N.D. Cal. July 17, 2017) (granting motion to dismiss *Monell* claim and holding that "'[s]tatistics of unsustained complaints of excessive force and other police misconduct, without any evidence that those complaints had merit, does not suffice to establish municipal liability under § 1983'") (quoting *Hocking v. City of Roseville*, No. Civ. S-06-0316 RRB EFB, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008)).[23]

Ms. Cornish also advances a failure-to-train argument, arguing that the 2012 and 2018 lawsuits should have put the OHA on notice that it had to train its officers better and that its failure to do so exhibits deliberate indifference to her constitutional rights.[24] This argument fails. A lawsuit filed in 2018 could not have put the OHA on notice in 2016 or 2017 (when the events that gave rise to this action took place). *Cf. Strode v. Cty. of San Diego*, No. 18cv670-CAB-NLS, 2019 WL 527468, at *3 (S.D. Cal. Feb. 11, 2019) (granting motion to dismiss *Monell* claim and holding that an "incident [that] arose after the incident in this case . . . could not have provided the County with notice of an alleged failure to train"). And Ms. Cornish's allegations about the 2012 lawsuit are not enough to plead that the OHA should have been put on notice that different training was required. *Cf. Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (affirming dismissal of *Monell* claim and holding that "isolated incidents of criminal wrongdoing by one

---

[23] Ms. Cornish claims that in *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012), the Ninth Circuit held that "a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Pl. Opp'n – ECF No. 27 at 6 (emphasis removed). This mischaracterizes the holding in *AE*. What the Ninth Circuit said was that the standard Ms. Cornish quotes was the standard before the Supreme Court's decisions in *Twombly* and *Iqbal*. *AE*, 666 F.3d at 636. After *Iqbal*, "allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 637 (quoting *Starr v; Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). "This standard applies to *Monell* claims[.]" *Id.* Following *Iqbal*, courts reject such bare-allegation claims as insufficient to withstand a motion to dismiss. *See, e.g.*, *Reynoso v. City of Los Angeles*, 469 F. App'x 563, 564 (9th Cir. 2012) ("[plaintiff's] bare allegation . . . is insufficient to establish a pattern and practice of municipal behavior") (citing *Iqbal*, 556 U.S. at 678); *Guerrero v. Cty. of Alameda*, No. C 18-02379 WHA, 2018 WL 3646818, at *5 (N.D. Cal. Aug. 1, 2018) ("Our court of appeals states that, 'in the past, our cases have not required parties to provide much detail at the pleading stage regarding policy or custom[;] municipal liability under Section 1983 was sufficient to withstand a motion to dismiss even if the claim was based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.' Since *Iqbal*, that standard no longer stands.") (internal brackets and ellipses omitted) (quoting *AE*, 666 F.3d at 636).

[24] FAC – ECF No. 18 at 8 (¶ 33); Pl. Opp'n – ECF No. 27 at 6–8.

1 deputy other than [defendant deputy] do not suffice to put the County or [Sheriff] on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights'") (quoting *Connick*, 563 U.S. at 62).

### 1.2 Final Policymaking Authority

"A municipality can be liable even for an isolated constitutional violation . . . when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003) (citing *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999)). Here, Ms. Cornish does not plead that any person with final policymaking authority caused the alleged constitutional violations against her.

### 1.3 Delegation and Ratification

#### 1.3.1 Governing law

To state a *Monell* claim through delegation, a plaintiff must show that the an official with policymaking authority delegated "final policymaking authority," as opposed to merely delegating discretion to act. *Christie*, 176 F.3d at 1236 (citing cases). "In making these determinations, courts consider whether the official's discretionary decision is 'constrained by policies not of that official's making' and whether the official's decision is 'subject to review by the municipality's authorized policymakers.'" *Id.* at 1236–37 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality op.)).

To plead a *Monell* claim through ratification, "a plaintiff must show that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it.'" *Dasovich v. Contra Costa Cty. Sheriff's Dep't*, No. 14-cv-00258-MEJ, 2014 WL 4652118, at *6 (N.D. Cal. Sept. 17, 2014) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.* (citing *Lytle*, 382 F.3d at 987). "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* (citing *Lytle* 382 F.3d at 987); *accord, e.g.*, *Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) ("A police department's 'mere failure to discipline its officers does not amount to ratification of their allegedly unconstitutional actions.'") (internal brackets omitted) (quoting *Sheehan v. City and Cty.*

*of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part*, 135 S. Ct. 1765 (2015)).

### 1.3.2 Application

Ms. Cornish does not plausibly plead a *Monell* claim based on delegation or ratification, as she does not plead that any authorized policymakers delegated or ratified any alleged constitutional violation. She alleges that the OHA did not discipline Officer Chow,[25] but a failure to discipline Officer Chow does not, without more, plead ratification. *Cf. Dasovich*, 2014 WL 4652118, at *3 (granting motion to dismiss *Monell* claim where plaintiff failed to allege affirmative action by a policymaker, as opposed to merely a failure to discipline).

\* \* \*

Ms. Cornish has not pleaded a cognizable *Monell* claim. The court grants the defendants' motion to dismiss the claim.

## 2. The Bane Act Claim

### 2.1 Governing Law

The Bane Act prohibits interference or attempted interference with a person's rights under federal or California law by "threats, intimidation, or coercion." Cal. Civ. Code § 52.1(a). With respect to a Bane Act claim for excessive force, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City and Cty. of San Francisco*, 17 Cal. App. 5th 766, 799–800 (2017)). "[T]he Bane Act requires a 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Id.* (citing *Cornell*, 17 Cal. App. 5th at 801–02).

### 2.2 Application

Ms. Cornish alleges that Officer Chow intentionally pulled her out of her car, threw her to the ground, and threatened to tase her. These allegations sufficiently plead that Officer Chow

---

[25] FAC – ECF No. 18 at 8 (¶ 33).

interfered or threatened to interfere with Ms. Cornish's Fourth Amendment rights by threats, intimidation, or coercion, and that he did had the specific intent to do so; they thus plead the elements of a Bane Act claim. *Cf. John v. Lake Cty.*, No. C 18-06935 WHA, 2019 WL 859227, at *5 (N.D. Cal. Feb. 22, 2019) (allegations that police officers pushed open door held by an elderly woman and thereby thrust her to the floor pleads interference with constitutional rights and specific intent).

The defendants argue that Ms. Cornish fails to plead a Bane Act claim because the Bane Act requires a plaintiff to "allege facts that show threats, intimidation or coercion *independent* from that inherent in an alleged wrongful seizure," citing *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947 (2012) and *Lyall v. City of Los Angeles*, 807 F.3d at 1179 (9th Cir. 2015).[26] Here, however, Ms. Cornish pleads that Officer Chow used excessive force. "[W]here, as here, an arrest is unlawful *and* excessive force is applied in making the arrest, there has been coercion 'independent from the coercion inherent in the wrongful detention itself' — a violation of the Bane Act." *Lyall*, 807 F.3d at 1196 (emphasis in original) (quoting *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 978 (2013)); *accord Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 801 (9th Cir. 2018) (citing *Lyall*, 807 F.3d at 1196). As the California Court of Appeal and the Ninth Circuit have held, *Shoyoye*'s independent-coercion requirement is "limited to cases involving mere negligence," whereas in excessive-force cases, "the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of [the Bane Act]." *Reese*, 888 F.3d at 1043 (citing *Cornell*, 17 Cal. App. 5th at 799–800); *accord Rodriguez*, 891 F.3d at 802 ("The [California] Court of Appeal explicitly rejected the [*Shoyoye*-based] argument that [defendants] advance here, explaining that the text of the Bane Act does not require that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged. . . . [I]n excessive force cases . . ., [the Bane Act] does not require proof of coercion beyond that inherent in the underlying violation.") (some internal quotation marks omitted) (citing *Cornell*, 17 Cal. App. 5th at 800).

---

[26] Defs. Mot. – ECF No. 21 at 13 (emphasis in original).

ORDER – No. 18-cv-05947-LB            11

Ms. Cornish has pleaded a cognizable Bane Act claim. The court denies the defendants' motion to dismiss the claim.

## CONCLUSION

The court grants the defendants' motion to dismiss the *Monell* claim without prejudice and with leave to amend and denies the motion to dismiss the Bane Act claim.

Ms. Cornish may file an amended complaint within 21 days of the date of this order. (If she files an amended complaint, she must also file as an attachment a blackline of her new amended complaint against her First Amended Complaint.)

**IT IS SO ORDERED.**

Dated: April 18, 2019

_____
LAUREL BEELER
United States Magistrate Judge